UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| STUBBORN MULE LLC, an Oregon limited liability company,<br><br>    Plaintiff,<br>v.<br><br>GREY GHOST PRECISION, LLC, an Idaho limited liability company; and GREY GHOST PRECISION, LLC, a Washington limited liability company,<br><br>    Defendants. | Case No. 2:22-cv-00399-DCN<br><br>**MEMORANDUM DECISION AND ORDER** |

## I. INTRODUCTION

Pending before the Court is Defendants Grey Ghost Precision, LLC, and Grey Ghost Precision's Motion to Stay. Dkt. 17. Having reviewed the record and briefs, the Court finds that the facts and legal argument are adequately presented. Accordingly, in the interest of avoiding delay, and because the Court conclusively finds the decisional process would not be significantly aided by oral argument, the Court will decide the Motion to Stay on the record and without oral argument. Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B).

For the reasons set forth below, the Motion to Stay is DENIED. The case will proceed in this Court, with a Show Cause Hearing set for January 17, 2023, in Coeur d'Alene.

## II. BACKGROUND

Plaintiff Stubborn Mule ("Mule") is an Oregon-based company that manufactures precision components used in aerospace and defense industries (including firearms). Dkt

24, at 3. Mule has a business relationship with a series of companies owned by Dennis Sterling Becklin. Dkt 17-1, at 2; Dkt. 19-1, at 3. Becklin's girlfriend, Sheri Johnson, is the president and owner of Mule. Dkt. 17-1 at 3; Dkt. 19-1, at 3.

Grey Ghost Entities, which consistent of Grey Ghost Precision, LLC (based in Idaho) and Grey Ghost Precision (based in Washington) (collectively referred to hereinafter as "Ghost"), is a supplier of firearms and equipment to military agencies, police agencies, and private customers. Dkt. 17-1 at 3.

The history between the parties is complicated, and many of the details are not directly relevant to this case. Nonetheless, a brief background provides important context to the Motion to Stay. In 2020, Becklin entered into a three-way partnership between his companies, Mule, and Ghost. *Id*. at 4. While Mule has a relationship with Becklin and his series of companies, they are still separate entities as stated by Ghost. Dkt. 19-1, at 3. Pursuant to this partnership, the CEO of Ghost, Casey Ingels, also served as CEO of one of Becklin's other companies called ECS Composites, Inc. ("ECS"). Dkt. 17-1 at 4. During the partnership, Becklin and Ghost helped each other with staffing and a variety of other issues. *Id*. In addition, Becklin, Mule, and Ghost pursued many joint ventures. *Id*. One of these joint ventures was a rifle line that was manufactured by Mule, assembled by Ghost, and then sold by both parties. *Id*. at 5. For this rifle line, Ghost usually sent Mule a purchase order on Ghost's letterhead, detailing the components needed. Mule then delivered the components, included with an invoice, to the address listed in the purchase order. Dkt. 24, at 3.

The rifle line joint venture continued for some time until a dispute over payment

arose. Mule alleges that Ghost started to default on payments, beginning in October of 2021, and continuing through March of 2022, and resulting in a total of $438,130.82 in unpaid invoices. *Id*. at 4. By contrast, Ghost maintains that Mule started to send fraudulent invoices after Ghost terminated its partnership with Mule on February 9, 2022. Dkt. 17-1, at 8. Ghost alleges that it terminated the partnership with Mule because Mule repeatedly produced defective rifle components over the course of the partnership. *Id*.

During this dispute, complications and differences started to arise between Becklin and Ingels, which ultimately led to Ingels' firing as CEO for ECS. *Id*. at 7. On March 22, 2022, Ingels sued ECS and Becklin for, among other claims, unlawful termination, defamation, and whistleblowing retaliation in Oregon state court ("Oregon Case"). *Id*. at 9.

On August 30, 2022, after Mule had failed to receive payment for the invoices still outstanding, it filed a complaint against Ghost in Idaho state court. Dkt. 1-1. On the same day, Mule filed an Application for Prejudgment Writ of Attachment and Motion for Order to Show Cause. Dkt. 10-2.

For two weeks after Mule filed its complaint in Idaho state court, Mule tried to serve Ghost's managing director and registered agent, Kathryn Hanson, but was unsuccessful. Dkt. 24, at 4. Mule attempted to serve Hanson at her home multiple times, and even tried to accomplish service through certified mail. *Id*. Mule contends that Hanson actively evaded service. *Id*. Mule has continued to try to accomplish service, but Ghost has not acknowledged service and has refused to agree to waive service. *Id*. at 5. Though it removed the case from Idaho state court to this Court on September 16, 2022, Ghost has

MEMORANDUM DECISION AND ORDER-3

never formally appeared in this case. *Id*. Nor did Ghost ever respond to Mule's Application for Prejudgment Writ of Attachment and Motion for Order to Show Cause.[1]

On October 24, 2022, Ghost filed counterclaims in Ingels' Oregon Case against Mule, Johnson, Becklin, and Becklin's series of companies, raising many claims, including contract claims involving the alleged delivery of the defective rifle components by Mule.[2] *Id*; Dkt. 17-1, at 8–9. On October 31, 2022, Ghost filed the instant Motion to Stay this case pending adjudication of the Oregon Case.

In an October 6, 2022 email to Mule, Ghost contended that the Oregon Case bears "a 100% overlap with the issues to be litigated in the Idaho matter." Dkt. 20-1, at 4. Mule alleges that Ghost is trying to escape the jurisdiction of this Court by filing counterclaims in the Oregon Case. Dkt. 24, at 5. Ghost contends, however, that the filing date of its counterclaims against Mule in the Oregon Case is irrelevant because the Oregon Case was filed first and raises similar issues as this case. Dkt. 28, at 5. Ghost seeks a stay of this proceeding until the Oregon Case is fully litigated. *Id*.

### III. LEGAL STANDARD

In its Motion to Stay, Ghost primarily relies on the standard set forth in *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976). Dkt. 15, at 4.

---

[1] Although filed in the Idaho state court case, Mule's Application for Writ of Attachment and Motion for Order to Show Cause became pending in this Court upon removal. Dist. Idaho Loc. Civil Rule 81.1(b). Ghost failed to respond to the Motion for Order to Show Cause and Application for Writ of Attachment within twenty-one days of removal. Dkt. 27. The Court accordingly set a show cause hearing on December 2, 2022.

[2] Ghost was not a party to the Oregon Case until Becklin and his companies filed counterclaims against Mule and others on October 24, 2022, nearly two months *after* Mule filed the Idaho state case on August 30, 2022. Dkt 19-5.

MEMORANDUM DECISION AND ORDER-4

Pursuant to *Colorado River*, considerations of "wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation," may support granting a stay when there is a concurrent state proceeding involving the same matter as that in the federal district court. *Id.* at 817–18 (cleaned up). The Supreme Court has stressed that the *Colorado River* exception to "the virtually unflagging obligation of the federal courts to exercise the jurisdiction given them" is a narrow one. *Id.* As such, only exceptional circumstances justify a stay pursuant to *Colorado River*, and whether such circumstances exist is determined by weighing a variety of factors. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 15–16 (1983).

The Ninth Circuit has identified eight factors to be considered in determining whether a *Colorado River* stay is appropriate:

> (1) which court first assumed jurisdiction over any property at stake; (2) the inconvenience of the federal forum; (3) the desire to avoid piecemeal litigation; (4) the order in which the forums obtained jurisdiction; (5) whether federal law or state law provides the rule of decision on the merits; (6) whether the state court proceedings can adequately protect the rights of the federal litigants; (7) the desire to avoid forum shopping; and (8) whether the state court proceedings will resolve all issues before the federal court.

*R.R. Street & Co. Inc. v. Transport Ins. Co.*, 656 F.3d 966, 978–79 (9th Cir. 2011). A district court also maintains the "discretionary power to stay proceedings." *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1109 (9th Cir. 2005) (citing *Landis v. N. American Co.*, 299 U.S. 248, 254 (1936)). The Supreme Court has explained "the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis*, 299 U.S. at 254–55. A federal court may find "it is efficient for its own docket and the

MEMORANDUM DECISION AND ORDER-5

fairest course for the parties to enter a stay of an action before it, pending resolution of independent proceedings which bear upon the case." *Dependable Highway Exp., Inc. v. Navigators Ins. Co.*, 498 F.3d 1059, 1066 (9th Cir. 2007) (quoting *Levya v. Certified Grocers of Cal., Ltd.*, 593 F.2d 857, 863 (9th Cir. 1979)). This rule "does not require that the issues in such proceedings are necessarily controlling of the action before the court." *Levya*, 593 F.2d at 863–64 (citations omitted).

In determining whether to grant a stay pursuant to its inherent authority, a district court must weigh competing interests. *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962) (citing *Landis*, 299 U.S. at 254–55). Such interests include: (1) "the possible damage which may result from the granting of a stay"; (2) "the hardship or inequity which a party may suffer in being required to go forward"; and (3) "the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *CMAX*, 300 F.2d at 268. The party seeking a stay "bears the burden of establishing its need." *Clinton v. Jones*, 520 U.S. 681, 708 (1997). Ultimately, the decision of whether to grant or deny a stay is committed to the district court's discretion. *Dependable Highway*, 498 F.3d at 1066; *Clinton*, 520 U.S. at 706–07 ("The District Court has broad discretion to stay proceeding as an incident to its power to control its own docket.").

## IV. ANALYSIS

### A. Appearance by Defendant

Before getting into the arguments regarding whether this action should be stayed, the Court will determine the appearance status of Ghost. "Normally, an appearance in an

action involves some presentation or submission to the court. . . [b]ut because judgments by default are disfavored, a court usually will try to find that there has been an appearance by defendant." *Direct Mail Specialists, Inc. v. Eclat Computerized Techs., Inc.*, 840 F.2d 685, 689 (9th Cir. 1988) (internal citations and quotations omitted).

There has not been a direct appearance by Ghost because Mule has not been able to serve Hanson despite many attempts, Mule's counsel has not filed a Notice of Appearance, and the parties have not been able to reach an agreement on the acceptance of service. Dkt. 23-1, ¶ 7. However, under *Direct Mail,* Ghost has validly appeared by actively participating in this case via its removal of the Idaho state case to this Court, subsequent Motion to Stay, and eventual filing of an Answer.[3] 840 F.2d at 689. Based on *Direct Mail*, the Court deems the aforementioned activity enough to constitute Ghost's appearance in this case.

**B. *Colorado River* Stay**

Ghost argues that the Court should assess its Motion to Stay under *Colorado River*, while Mule suggests Ghost has not met any of the eight factors in *Colorado River*. Mule relies on the Court's recent decision in *Bauer v. Bonner Cty.*, No. 2:22-CV-00270-DCN, 2022 WL 7515082 (D. Idaho Oct. 13, 2022) to support its argument.

The Court agrees with Mule that Ghost has not met the *Colorado River* standard. "The threshold question in deciding whether *Colorado River* abstention is appropriate is whether there are parallel federal and state suits." *ScripsAmerica, Inc. v. Ironridge Glob.*

---

[3] It is also clear from Mule's filings that Ghost *has* evaded service in this case. *See generally*, Dkt. 23-1, Dkt. 25. Despite evading service, Ghost also ultimately Answered Mule's Complaint, but only after Mule filed a Motion for Entry of Default Judgment. Dkt. 23; Dkt. 26. Such conduct is frowned upon and contravenes the mandate that the federal courts and the parties must work to secure the just, speedy, and inexpensive determination of every action. Fed. R. Civ. Proc. 1.

MEMORANDUM DECISION AND ORDER-7

*IV, Ltd.*, 56 F. Supp. 3d 1121, 1147 (C.D. Cal. 2014) (quoting *Chase Brexton Health Services, Inc. v. Maryland*, 411 F.3d 457, 463 (4th Cir. 2005)). In the Ninth Circuit, "exact parallelism [between the federal and state suits] is not required. It is enough if the two proceedings are substantially similar." *Nakash v. Marciano*, 882 F.2d 1411, 1416 (9th Cir. 1989) (cleaned up). The inquiry of whether the two proceedings are "substantially similar" examines whether the suits involve the same parties and the same claims. *ScripsAmerica*, 56 F. Supp. at 1147–48.

 Ghost seeks a stay of this proceeding until the Oregon Case is finished because the contract issue in this case is also part Ghost's counterclaims in the Oregon Case. However, the Oregon Case involves very different claims than those at issue here. The claims in the Oregon Case range from: (1) Ingels' claims for retaliation, breach of contract, defamation, wrongful discharge, and other torts related to his termination against ECS and Becklin; (2) Becklin and ECS's counterclaims against Ingels, Hanson, the Grey Ghost entities, and other counter-defendants for breach of fiduciary duty, conspiracy, and conversion; and (3) Ghost's counterclaims against Mule, Johnson, Becklin, and others for breach of contract, breach of fiduciary duty, fraud, defamation, and tortious interference. Dkt. 17-1, at 9–10; Dkt. 19-1, at 16, 18, 19, 20–23; Dkt. 19-4, at 65. Even with the inclusion of the counterclaims raised by Ghost that involve the defective nature of the rifle components, the Oregon Case is a much bigger case centered on Becklin and ECS's firing of Ingels. The Court is unsure that claims Mule raises in this case would be fully addressed in the Oregon case considering its massive scope. *State Water Res. Control Bd.*, 988 F.3d at 1208 (finding a *Colorado River* stay was inappropriate where the district court did not have "full

MEMORANDUM DECISION AND ORDER-8

confidence" that the state proceeding would "end the litigation") (quoting *Intel Corp.*, 12 F.3d at 913). In addition, the same parties are not involved in both lawsuits; several of the parties in the Oregon Case are not named in the instant dispute, and are not involved in Mule's claims against Ghost. "When the federal and state suits involve different parties and different claims, *Colorado River* is inapplicable." *Bauer v. Bonner County, Idaho*, 2:22-CV-00270-DCN, 2022 WL 7515082, at *5 (D. Idaho Oct. 13, 2022) (citing *United States v. State Water Res. Control Bd.*, 988 F.3d 1194, 1204 (9th Cir. 2021)). Thus, *Colorado River* is inapplicable.

Moreover, even if *Colorado River* was applicable, a stay would still not be justified under the *Colorado River* factors Specifically, the first factor—which the court first assumed jurisdiction over any property at stake—is neutral because Mule seeks only monetary damages. "[M]oney ... is not the sort of tangible physical property referred to in *Colorado River*." *Travelers Indem. Co. v. Madonna*, 914 F.2d 1364, 1368 (9th Cir. 1990) (cleaned up).

The second factor, the inconvenience of a federal forum, weighs against a stay because Ghost is domiciled in Idaho, and itself removed the Idaho state case to this Court. "[T]he question is whether the inconvenience of the federal forum is so great that this factor points toward abstention." *Cerit v. Cerit*, 188 F. Supp. 2d 1239, 1249 (D. Haw. 2002). Ghost's principal place of business is in Idaho, and it removed the Idaho state case to federal court, so hearing the case in this Court would not be greatly inconvenient for Ghost. Dkt. 24, at 4.

The desire to avoid piecemeal litigation also weighs against a stay. "Piecemeal

MEMORANDUM DECISION AND ORDER-9

litigation occurs when different tribunals consider the same issue, thereby duplicating efforts and possibly reaching different results." *Am. Intern. Underwriters (Philippines), Inc. v. Contl. Ins. Co.*, 843 F.2d 1253, 1258 (9th Cir. 1988). To weigh this factor, the Court must consider "whether exceptional circumstances exist which justify special concern about piecemeal litigation." *Travelers*, 914 F.2d at 1369. The adjudication of contract and tort claims, such as those at issue here, are less likely to be viewed as "exceptional circumstances" warranting a stay. *Travelers*, 914 F.2d at 1369 ("This case involves ordinary contract and tort issues and is thus unlike Colorado River where important real property rights were at stake and where there was a substantial danger of inconsistent judgments."). The Court is capable of hearing the contract issue in this case while the Oregon case proceeds with its broader issues.

The fourth factor—the order in which the forums obtained jurisdiction—is neutral because both of the contract claims surrounding the rifle components in each case are in their infancy. "[P]riority should not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions." *Cone*, 460 U.S. at 21. Mule has not responded to Ghost's counterclaims in the Oregon case, meaning that the rifle component contract claims in both cases are around the same point in their lifespan. Dkt. 24, at 7. The progress of the other claims in the Oregon case are irrelevant to the Court's consideration because they do not involve Mule.

Factor 5 and 6—whether federal law or state law applies and whether the state court proceeding can adequately protect the rights of the federal litigants—are also neutral because this Court is capable of hearing state law claims. "[A]lthough the presence of

MEMORANDUM DECISION AND ORDER-10

federal-law issues must always be a major consideration weighing against surrender [of federal jurisdiction], the presence of state-law issues may weigh in favor of that surrender only in some rare circumstances." *Travelers*, 914 F.2d at 1370. This case involves routine state law issues such as breach of contract and unjust enrichment, which this Court frequently adjudicates in diversity cases. Moreover, the ability of the Oregon court to protect federal rights is irrelevant since there are no federal claims raised in this case.

The desire to avoid forum shopping weighs against a stay because Mule filed its contract claim against Ghost first. Ghost subsequently filed its contract counterclaims against Mule in the Oregon State Case. Thus, Mule did not forum shop in filing this suit. The Ninth Circuit stated that there is "nothing invidious about a plaintiff filing suit in federal court before his opponent files a similar suit in state court." *Travelers*, 914 F.2d at 1371. Ghost argues that it was clear Mule was forum shopping because Mule admitted in an email that that "Idaho has favorable law for us." Dkt. 17-1, at 13. However, that statement by itself does not mean Mule was forum shopping. As in *Travelers*, the filing party's preferred forum does not constitute forum shopping. *Travelers*, 914 F.2d at 1371.

Here, the majority of the *Colorado River* factors either weigh against a stay or are neutral. "Any doubt as to whether a factor exists should be resolved against a stay, not in favor of one." *Id*. Thus, even if a *Colorado River* was applicable, a stay is not appropriate.

### C. Discretionary Stay

The Court next considers the propriety of a stay based on its inherent authority, weighing the factors outlined by the Ninth Circuit in *CMAX*. 300 F.2d at 268. The potential damage to Ghost if the Court denies a stay would be minimal considering that Ghost is

MEMORANDUM DECISION AND ORDER-11

domiciled in Idaho, and also removed the Idaho state case to this Court. Dkt. 24, at 4; Dkt. 1. In addition, the massive litigation in Oregon involves a variety of issues, claims, and parties, whereas the contract issues in this case are relatively straight forward. The moving party has a burden to show "a clear case of hardship or inequity in being required to go forward." *Landis*, 299 U.S. at 255. Ghost has not shown any clear case of hardship by having Mule's contract claims heard in this Court. Moreover, Stubborn Mule filed this case in Ghost's home state of Idaho to avoid pointless litigation over jurisdiction and to ensure that it could more easily secure assets—located in Idaho—necessary to satisfy Ghost's purported debt to Mule. Dkt. 24, at 8. Forcing Mule to await adjudication of its relatively simple contract claims until the Oregon Case is resolved would cause Mule hardship. And, while judicial economy would favor a stay because the Court has over 400 pending civil and criminal cases on its docket, the Court is confident it can resolve the much narrower scope of the contract claim at issue here before the many claims involving separate parties are resolved in the Oregon case. In short, the *CMAX* factors weigh against a stay.

## V. CONCLUSION

For the reasons stated above, Ghost's Motion to Stay is denied. In addition, the Court finds that Ghost has appeared, and the case will proceed with the scheduled Show Cause Hearing.

## VI. ORDER

**IT IS ORDERED:**

1. Ghost's Motion to Stay (Dkt. 17) is **DENIED**.

2. Given Ghost's Answer (Dkt. 26), Mule's Motion for Entry of Default (Dkt. 23) is

MOOT and is therefore DENIED;

3. The Court will proceed with the Show Cause Hearing on Mule's Application for Prejudgment Writ of Attachment on January 17, 2023, at 2:00 p.m. in Coeur d'Alene, Idaho.

DATED: January 9, 2023

_____
David C. Nye
Chief U.S. District Court Judge