UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| STUBBORN MULE LLC, an Oregon limited liability company,<br><br>    Plaintiff,<br><br>v.<br><br>GREY GHOST PRECISION, LLC, an Idaho limited liability company; and GREY GHOST PRECISION, LLC, a Washington limited liability company,<br><br>    Defendants. | Case No. 2:22-cv-00399-DCN<br><br>**MEMORANDUM DECISION AND ORDER** |
| GREY GHOST PRECISION, LLC, an Idaho limited liability company; and GREY GHOST PRECISION, a Washington limited liability company,<br><br>    Counterclaimants,<br><br>v.<br><br>STUBBORN MULE LLC, an Oregon limited liability company,<br><br>    Counter-Defendant. | |

## I. INTRODUCTION

Pending before the Court are five motions submitted by the parties: Defendants Grey Ghost Precision, LLC et al.'s ("Ghost") Motion to Discharge Writ of Attachment, For Attorney's Fees, Costs, and Additional Sanctions (Dkt. 57); Ghost's Motion to Release Funds from Court Registry (Dkt. 59); Plaintiff Stubborn Mule LLC's ("Mule") Motion for Order Reducing Ghost's Undertaking (Dkt. 68); Mule's Motion for Leave to File First

Amended Verified Complaint (Dkt. 69); and Ghost's Motion for Leave to File First Amended Counterclaim (Dkt. 73).

Having reviewed the record and briefs, the Court finds that the facts and legal arguments are adequately presented. Accordingly, in the interest of avoiding delay, and because the Court conclusively finds the decisional process would not be significantly aided by oral argument, the Court will decide the five Motions on the record and without oral argument. Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B).

For the reasons set forth below, Ghost's Motion to Discharge Writ of Attachment, For Attorney's Fees, Costs, and Additional Sanctions is DENIED; Ghost's Motion to Release Funds from Court Registry is DENIED; Mule's Motion for Order Reducing Ghost's Undertaking is GRANTED; Mule's Motion for Leave to File First Amended Verified Complaint is GRANTED; and Ghost's Motion for Leave to File First Amended Counterclaim is GRANTED.

## II. BACKGROUND

As explained previously in the Court's decision on Ghost's Motion to Stay (Dkt. 31), this dispute arises from a contract entered into by the parties sometime in 2020. After denying the Motion to Stay, the Court held a show cause hearing on January 17, 2023, regarding Mule's then-pending Application for Prejudgment Writ of Attachment (hereinafter "Writ Application") (Dkt. 10-2). Dkt. 47. During the hearing, the parties reached an agreement regarding how to proceed with the Writ. *Id*. Specifically, the parties agreed that: (1) the Writ Application would be granted; (2) Mule would post an undertaking of $100,000 to support the Writ Application; and (3) Ghost would then stay the Writ of

Attachment by posting an undertaking of $391,570.05. *Id*. On January 27, 2023, the Court entered an order consistent with these terms. Dkt. 48. Thereafter, the Court received checks for the ordered amounts from Mule on April 27, 2023, and from Ghost on May 23, 2023. Dkt. 52; Dkt. 54.

On June 28, 2023, Ghost deposed Sheri Johnson, Mule's Executive Director. Dkt. 69-3, at 5.[1] On June 29, 2023, Ghost deposed Sterling Becklin, Mule's majority owner. *Id*.

On July 19, 2023, Ghost filed its Motion to Discharge Writ of Attachment, for Attorney's Fees, Costs and Additional Sanctions (hereinafter "Discharge Motion"). Dkt. 57. In its Discharge Motion, Ghost alleges: (1) Becklin did not have personal knowledge to verify Mule's Complaint; (2) the amount sought in Mule's Writ Application was inaccurate based on Becklin's deposition testimony; and (3) Becklin's deposition testimony further revealed the inaccuracy of other claims made in Mule's Complaint. Dkt. 57-1, at 2. As a result, Ghost asks the Court to: (1) discharge the Writ of Attachment provided for in the Court's January 27, 2023 order; (2) award Ghost its attorney's fees and costs; and (3) issue additional sanctions based the purportedly false allegations in Mule's Complaint and Application for Prejudgment Writ of Attachment. Dkt. 57, at 1–2.

On August 8, 2023, Ghost filed a Motion to Release Funds from Court Registry (hereinafter "Funds Motion") (Dkt. 59)[2] and an Ex Parte Motion to Shorten Briefing Schedule on Motion to Release Funds from Court Registry (hereinafter "Motion to

---

[1] Page citations are to the ECF-generated page number.

[2] The Funds Motion and Discharge Motion rely on similar legal authority and facts. The distinction between the two is the specific relief requested: the Funds Motion seeks release of the funds currently held by the Court, while the Discharge Motion seeks to discharge of the Writ of Attachment.

MEMORANDUM DECISION AND ORDER - 3

Expedite") (Dkt. 58). Later the same day, Mule filed a Motion for Extension of Time to Respond to Ghost's Motion to Discharge Writ of Attachment, for Attorney's Fees, Costs and Additional Sanctions (hereinafter "Extension Motion"). Dkt. 61.

On August 28, 2023, the Court denied the Motion to Expedite, held the Funds Motion in abeyance pending the Court's ruling on the Discharge Motion, and granted the Extension Motion. Dkt. 67.

On August 23, 2023, Mule filed a Motion for Leave to File First Amended Verified Complaint (hereinafter "Motion to Amend"), contending Mule realized its damage calculations were inaccurate while Johnson and Becklin were being deposed. Specifically, the two explained the $363,543.71 in damages Mule originally calculated for products Mule manufactured and shipped to Ghost also included the cost for manufactured and unshipped products. Dkt. 69-3, at 5. Mule previously identified an additional $76,398.85 of damages for unshipped, manufactured products. *Id*. at 2. After correcting the error, the total amount of damages Mule seeks is $433,518.46, which includes: (1) $243,840.02 for products that were manufactured and shipped to Ghost; (2) $119,523.66 for products that were manufactured and unshipped to Ghost; and (3) $70,154.78 in interest.[3] Dkt. 69-3, at 12. Ghost subsequently objected to the Motion to Amend, suggesting Mule's proposed amended complaint is not verified and that Mule's purported bad faith in estimating its damages unduly prejudiced Ghost. Dkt. 79, at 2, 4.

---

[3] The previous amount of damages Mule sought was a grand total of $457,691.084 which included: (1) $363,543.71 for products that were manufactured and shipped to Ghost, (2) $76,398.85 for products that were manufactured and unshipped to Ghost; and (3) $28,505.32 in interest. Dkt. 69-3, at 12.

MEMORANDUM DECISION AND ORDER - 4

On the same day Mule filed its Motion to Amend, Mule also filed a Motion for Order Reducing Ghost's Undertaking Under Idaho Code Section 8-506C (hereinafter "Motion to Reduce Undertaking"). Dkt. 68. To reflect the proposed damages identified in its Motion to Amend, Mule seeks to reduce Ghost's undertaking from $391,570.05 to $293,199.04. Dkt. 68, ¶ 14–15.

On August 30, 2023, Ghost filed a Motion for Leave to File First Amended Counterclaim (hereinafter "Counterclaim Motion"). Dkt. 73. On September 20, 2023, Mule filed a Notice of Non-Opposition to the Counterclaim Motion. Dkt. 81.

The Court addresses the aforementioned motions in turn.

### III. ANALYSIS

**A. Discharge Motion (Dkt. 57)**

*1. Legal Standard*

Federal Rule of Civil Procedure 64(a) generally provides "every remedy is available that, under the law of the state where the court is located, provides for seizing . . . property to secure satisfaction of the potential judgment." Fed. R. Civ. P. 64(a). This specifically includes writs of attachment. Fed. R. Civ. P. 64(b). Under federal procedural law, a motion for writ of attachment is governed by the laws of the state where the district court in which the motion is filed is located, except that a federal statute will govern if one otherwise exists and applies. *Id.* In this case, Idaho state law applies.

Under Idaho law, attachment is a remedy through which a plaintiff with a contractual claim to money—rather than a claim to a specific item of property—may have defendant's property seized before judgment and held for potential execution after

judgment. Idaho Code section 8-501 states a plaintiff "may make application to have the property of the defendant attached . . . as security for the satisfaction of any judgment that may be recovered, unless the defendant gives security to pay such judgment[.]" Such a remedy applies in limited circumstances, including "an action . . . upon contract . . . for the direct payment of money, where the contract is not secured by any mortgage, deed of trust, security interest or lien upon real or personal property[.]" Idaho Code § 8-501.1.[4]

Idaho Code section 8-502(a) outlines the requirements for obtaining a writ of attachment, which include:

> (1) that the defendant is indebted to the plaintiff; (2) that the debt is upon a contract, express or implied, for the direct payment of money; [] (3) that the payment of the same has not been secured by any mortgage, deed of trust, security interest or lien upon real or personal property; and (4) [that] the attachment is not sought and the action is not prosecuted to hinder, delay, or defraud any creditor of the defendant.

*Eta Compute, Inc. v. Semones*, 2019 WL 267702, at *3 (D. Idaho Jan. 18, 2019) (citing Idaho Code § 8-502(a)).

Idaho Code section 8-506 explains the process of executing a writ of attachment by the sheriff. Section 8-506 begins by stating, "[t]he sheriff to whom the writ is directed and delivered must execute the same without delay, and *if the undertaking* mentioned in section 8-506C, Idaho Code, *be not given*, as follows. . . ." Idaho Code § 8-506 (emphasis added). A writ of attachment, however, may not be executed if the requirements of Idaho Code section 8-506C are satisfied.

---

[4] The first three paragraphs of this legal standard are generally incorporated from *Engr./Remediation Resources Group, Inc. v. Performance Sys., Inc.*, 2017 WL 3925414, at *2 (D. Idaho Sept. 7, 2017).

Idaho Code section 8-506C states that the defendant:

> [M]ay retain or require the return of all or any portion of the property upon filing with the court a written undertaking . . . to the effect that they are bound in an amount sufficient to satisfy the plaintiff's claims, besides costs, or in an amount equal to the value of the specific property sought to be retained or returned which has been or is about to be attached.

An undertaking equal in value to the property "sought to be retained" will prevent a sheriff from executing "the writ as to the specific property covered by such undertaking." *Id*.

*2. Discussion*

a. <u>The Discharge Motion is Procedurally Deficient</u>

Ghost relies on authority stating that a writ of attachment must be discharged if it issued based on false information. Dkt. 57-1, at 8. Mule counters that the Discharge Motion is procedurally deficient because a writ of attachment has not been issued and, therefore, cannot be discharged. Dkt. 65, at 13. The Court agrees with Mule.

The Writ Application was granted by the Court after it was stipulated to by the parties. Dkt. 48. However, the Writ itself was not *issued* by the Court because Ghost *stayed* the Writ's issuance by posting its undertaking.[5] Pursuant to Idaho law, "[i]f such undertaking is filed in an amount equal to the value of the specific property *sought to be retained* . . . the sheriff *shall not execute* the writ as to the specific property covered by such undertaking." Idaho Code § 8-506C (emphasis added). This procedure was also

---

[5] The Court's order on Mule's Application for Prejudgment Writ of Attachment stated, "[Ghost] may stay issuance of the writ of attachment by filing with the Court a written undertaking in accordance with Idaho Code § 8-506(C) in the amount of $391,570.05." Dkt. 48, ¶ 3.

MEMORANDUM DECISION AND ORDER - 7

followed in *Eta Compute*, where another Judge of this District found third parties could stay the plaintiff's writ of attachment from being issued if they filed a written undertaking with the court. 2019 WL 267702, at *5.

The Idaho caselaw Ghost cites involved situations where a writ of attachment had already been issued and is thus inapplicable. *See Nalder v. Crest Corp.*, 472 P.2d 310, 313 (Idaho 1970) (holding the issued writ of attachment was not wrongful despite the defendant's contention that it was outside the jurisdictional limit); *Mitchell v. Ada Inv. Co.*, 246 P. 10, 12 (Idaho 1926) (finding the writ of attachment could not be discharged—despite ample evidence that the defendant's debt was secured by a creditor—because the defendant untimely sought discharge after the trial court's judgment); *McCluskey v. Galland*, 511 P.2d 289 (Idaho 1973) (explaining it was unnecessary to rule on trial court's order denying dissolution of writ of attachment because it reversed the trial court's judgment in favor of plaintiff, making the issue moot).[6]

Here, Ghost's Discharge Motion is procedurally deficient because the Writ has neither been issued nor attached to any specific property. The Court cannot discharge a writ that has not been issued. In addition, Ghost stipulated to the Court granting Mule's Writ Application and Ghost willingly posted an undertaking to stay the Writ. As discussed below, in the apparent absence of deceptive behavior by Mule, the Court will not alter an order to which Ghost itself stipulated.

---

[6] Notably, Ghost admits that the Writ of Attachment has not been issued. *See* Dkt. 59-1, at 3 ("As reflected in the Court's Attachment Order (Dkt No. 48) Grey Ghost needed only to post a cash bond to stay issues [sic] of Plaintiff's requested writ—Defendants now wish to exercise their right to recover that cash bond and allow the writ to issue in whatever form the Court decides").

Despite the Discharge Motion's procedural deficiency, the Court will consider Ghost's arguments with respect to whether the evidence supporting Mule's Writ Application was false and misleading, and, if so, whether that would be enough to dissolve the Writ Application.

b. The Evidence Supporting the Writ Application

Because Ghost has already stipulated to the Writ Application and made no argument in its Discharge Motion or Reply as to whether a writ could be issued in the first place under Idaho Code section 8-502(a), the Court considers such requirements to be met. The Court thus addresses Idaho Code section 8-502(a) only in conjunction with Idaho Code section 8-534, which can provide a defendant relief if the defendant shows an improper writ of attachment was issued. Idaho Code section 8-534 states:

> The defendant may also at any time, either before or after the release of the attached property, or before any attachment shall have been actually levied, apply on motion upon reasonable notice to the plaintiff, to the court in which the action is brought, or to the judge thereof, that the writ of attachment be discharged on the ground that the same was improperly or irregularly issued.

Ghost contends Mule presented false evidence to the Court that warrants dissolution of the Writ Application.

First, Ghost argues that Becklin did not have personal knowledge to verify Mule's Complaint through his declaration. Dkt. 57-1 at 3, 11. "Declarations must be made with personal knowledge." *Hexcel Corp. v. Ineos Polymers, Inc.*, 681 F.3d 1055, 1063 (9th Cir. 2012). Personal knowledge "may be based upon review of business records rather than personal participation in activities." *Miller v. Lemhi Cty.*, 320 F.R.D. 226, 235 (D. Idaho 2017). A declarant does not need personal involvement in activities to have personal

knowledge of those activities. *Marceau v. Idaho*, 2011 WL 3439178, at *8 (D. Idaho Aug. 5, 2011) (quoting *Wash. Cent. R.R. Co. v. Nat'l Mediation Bd.*, 830 F. Supp. 1343, 1353 (E.D. Wash. 1993)). "[P]ersonal knowledge can come from review of the contents of files and records." *Wash. Cent. R.R. Co.*, 830 F. Supp. at 1353.

The Court finds that Becklin did have personal knowledge to verify Mule's Complaint. Specifically, Becklin testified that he reviewed invoices, financial documents, purchase orders, and other documents filed with Mule's Complaint. Dkt. 57-2, at 102:2–13, 105:1–106:19. While Ghost paints Becklin as a "figurehead" who does not have personal knowledge of a "typical executive or manager," Dkt. 70, at 12, Becklin does not need to have perfect knowledge of every aspect of the business to verify Mule's Complaint but must have knowledge that is based on more than "purely belief." *Schroeder v. McDonald*, 55 F.3d 454, 460 (9th Cir. 1995). Becklin explained that he helped Johnson when the payment dispute with Ghost started. Dkt. 57-2, at 102:2–13. Email correspondence between Becklin and Kathryn Hanson, Mule's managing director, shows that Becklin had personal knowledge of Mule's business. Dkt. 57-3, at 21–23. Although Becklin was not as involved with Mule as he was when he first acquired the company in 2018, his knowledge of the business, and of the payment dispute with Ghost, constitutes sufficient personal knowledge to verify Mule's Complaint.

Second, Ghost outlines "a series of falsehoods," Becklin verified in the Complaint, which Ghost contends also contributed to Mule's Writ Application. Dkt. 57-1, 9. Some of these facts relate to Mule's credit system, knowledge of defects, accounting errors, and confusion over the purported amount Ghost is indebted to Mule. *Id*. at 8–10. The Court

MEMORANDUM DECISION AND ORDER - 10

believes many of these issues are more appropriate for summary judgment or trial, but the dispute over the amount of indebtedness does invoke Idaho Code section 8-502(a)(1).

Ghost argues the Writ Application should be dissolved because Becklin confirmed that some of the damages sought by Mule in its initial Complaint may have been inaccurate. However, an uncertain amount of damages—to be conclusively determined at trial—does not warrant discharge of a writ of attachment. *Wallace v. Perry*, 257 P.2d 231, 235 (Idaho 1953) ("That the amount of recovery is uncertain and has to be proved does not defeat attachment"); *see also Citizens Auto. Inter-Ins. Exch. v. Andrus*, 212 P.2d 406, 411 (Idaho 1949) ("The fact that the plaintiff might fail to recover for the full amount stated by him to be due in his affidavit for attachment, is not such a false statement in the affidavit as to authorize the discharge of the attachment"). The errors in Mule's damages calculation appears to have been a miscalculation, rather than an intentional misrepresentation. Moreover, after discovering its error, Mule promptly filed its proposed amended complaint (Dkt. 73) to correct the amount of damages it seeks. Although reduced, Mule's amended damages calculation remains within the statutory requirement for issuing a writ.[7]

While Ghost briefly references Idaho Code section 8-502(a)(1) in the Discharge Motion, it does not make a direct argument that Mule violated the statute. Idaho Code section 8-502(a)(1) states a writ application must specify the amount "indebtedness over and above all legal setoffs or counterclaims." Ghost has valued the amount of its damages

---

[7] "On a motion for dissolution of an attachment for insufficiency of the complaint, if it appears that the complaint can be made good by amendment, the plaintiff should be allowed to amend, but the amendment must be made before a decision is rendered on the motion." 7 C.J.S. Attachment § 501. Mule meets this requirement because the Court is ruling on the Discharge Motion and Motion to Amend Complaint simultaneously.

MEMORANDUM DECISION AND ORDER - 11

in its proposed amended counterclaims to be $359,374.00. Dkt. 73-2, ¶ 57. If permitted to amend, Mule still satisfies Idaho Code section 8-502(a)(1) because it contends Ghost is indebted to Mule in the amount of $363,363.68 (not including interest and attorney fees). Dkt. 69-2, ¶ 31. Thus, Mule's proposed damages are still higher than the amount Ghost can offset with its counterclaims.

While it does appear the damages Mule sought in its initial Complaint may have been inaccurate (*see* Dkt. 57-2, at 114:11–119:10), Mule explains that it is still entitled to the full amount it originally requested in the Writ Application because it "reflects the total amount [Ghost] owes [Mule] for the products it manufactured, plus interest that had accrued." Dkt. 65, at 17–18.

To conclude, Becklin had personal knowledge sufficient to verify Mule's Complaint. In addition, the inaccuracies with respect to Mule's damages and Ghost's undertaking do not warrant dissolution of either the Writ Application or the Court's order on Mule's Writ Application. In short: (1) the statutory requirements for issuing a writ remain satisfied; (2) Mule made a miscalculation rather than a misrepresentation, and (3) Mule has since corrected its error. As such, the Court rejects Ghost's arguments,[8] the Writ Application remains valid, and the Court's order on Mule's Application for Prejudgment Writ of Attachment—again, that the parties stipulated to—stands.

Thus, Ghost's Discharge Motion is DENIED.

---

[8] Similarly, the Court rejects Ghost's request for sanctions, fees, and dismissal of Mule's Complaint.

MEMORANDUM DECISION AND ORDER - 12

### B. Funds Motion (Dkt. 59)

In its Funds Motion, Ghost seeks release of the $391,570.05 it voluntarily paid to the Court as an undertaking to stay the Writ of Attachment from issuing. Dkt. 59-1, at 1. Ghost reasserts the arguments in its Discharge Motion—which the Court has denied—and states, "whether the Court ultimately discharges the writ of attachment [Mule] procured through perjury is irrelevant to whether [Ghost] should be allowed to exercise its absolute right to recover the cash bond it posted to stay that writ's issuance." *Id*. at 4. Ghost cites no authority to support this contention.

Because Ghost has already stipulated to, and posted, an undertaking to stay the Writ from issuing, and because the Court deems the Writ Application valid, the Court sees no reason to disperse Ghost's funds until this matter has been resolved.

### C. Motion to Amend Complaint (Dkt. 69)

*1. Legal Standard*

Federal Rule of Civil Procedure 15(a) provides that, once a responsive pleading has been served, a party may amend its pleading "only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Since Ghost objects to Mule's Motion to Amend Complaint, Mule must obtain leave of the Court to amend. The Ninth Circuit Court of Appeals recognizes that "the underlying purpose of Rule 15 [is] to facilitate [a] decision on the merits, rather than on the pleadings or technicalities," and, therefore, "Rule 15's policy of favoring amendments to pleadings should be applied with extreme liberality." *Chudacoff v. Univ. Med. Cent. of S. Nev.*, 649 F.3d 1143, 1152 (9th Cir. 2011) (quoting *United States v. Webb*,

655 F.2d 977, 979 (9th Cir. 1981)).

The decision whether to grant or deny a motion to amend pursuant to Rule 15(a) rests within the sole discretion of the trial court. The four factors that are commonly used to assess the propriety of a motion for leave to amend are: 1) undue delay, bad faith or dilatory motive on the part of the movant; 2) repeated failure to cure deficiencies by amendments previously allowed; 3) undue prejudice to the opposing party by virtue of allowance of the amendment; and 4) futility of amendment. *C.F. ex rel. Farnan v. Capistrano Unified Sch. Dist.*, 654 F.3d 975, 985 n.5 (9th Cir. 2011) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

The Ninth Circuit has held that although each of the aforementioned factors are relevant when ruling on a motion for leave to amend, the "crucial factor is the resulting prejudice to the opposing party." *Howey v. United States*, 481 F.2d 1187, 1189 (9th Cir. 1973); *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (explaining prejudice is the touchstone of the inquiry under Rule 15(a)). Ultimately, "[u]nless undue prejudice to the opposing party will result, a trial judge should ordinarily permit a party to amend its complaint." *Howey*, 481 F.2d at 1190. "The party opposing amendment bears the burden of showing prejudice." *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 187 (9th Cir. 1987).

*2. Discussion*

Mule wishes, through its motion to amend the complaint, to correct the damages it seeks after realizing it made a mistake in its initial valuation. Dkt. 69-3, at 2. Ghost objects to Mule's Motion. Dkt. 79. The Court has already held above that amending Mule's

Complaint to correct and reduce the damages it seeks would not frustrate the requirements under Idaho Code section 8-502(a) for the Writ Application.

Ghost objects to amendment for two reasons: (1) Mule's proposed amended complaint is not verified; and (2) Mule's bad faith and undue prejudice. Dkt. 79, at 2; 4. The Court is perplexed by Ghost's first objection because Mule's proposed amended complaint is a *proposal*. Mule has stated that if the Court were to provide leave to file an amended complaint, it would include a declaration with the amended complaint to authenticate it. Dkt. 82, at 5. Even then, under Federal Rule of Civil Procedure 11, a pleading need not be verified or accompanied by an affidavit unless a rule or statute states otherwise.[9] Ghost has not identified any rule or statute requiring verification here. In short, Ghost's first argument fails. Next, the Court will turn to the *Foman* factors.

Considering the first *Foman* factor, the Court does not believe there will be any undue delay in this case by granting leave to amend. Mule filed its Motion to Amend Complaint before the Scheduling Order's August 30, 2023 deadline for seeking amendment of pleadings.[10] Dkt. 50. As for bad faith, the Court has already ruled that Becklin had sufficient personal knowledge to verify Mule's Complaint and finds he did so to the best of his knowledge at the time of verification. As explained above, Mule's initial error in its damages valuation appears to have been a good faith numerical discrepancy, which Becklin and Johnson recognized during their depositions. Moreover, permitting

---

[9] Ghost does not direct the Court to any rule or statute that requires the amended complaint be verified or accompanied by affidavit.

[10] Although the Court's original deadline for amending pleadings was December 1, 2022, Dkt. 9, the parties subsequently stipulated to extending this deadline to August 30, 2023. Dkt. 50, at 2.

MEMORANDUM DECISION AND ORDER - 15

amendment will allow Mule to correct its error. After amendment, Mule's claims remain the same, and the only change to the Mule's initial complaint is its estimate of damages.

Since this is the first motion to amend filed in this case, the second *Foman* factor—referring to previously allowed amendments—is inapplicable. Similarly, the fourth *Foman* factor is not relevant because Ghost does not suggest, and the Court does not find, amendment would be futile.

Moving to the third and most crucial factor—prejudice to the opposing party—the Court cannot find any prejudice to Ghost by permitting amendment. Apart from questioning why Mule did not have the correct total for its damages in the first place, Ghost does not explain exactly how it would be prejudiced by Mule's proposed amendment. Dkt. 79, at 6. As such, Mule has not met its burden of showing prejudice. *DCD Programs*, 833 F.2d at 87. Further, as opposed to being prejudiced, Ghost would likely *benefit* from Mule's proposed amendment because it reduces the amount of damages Mule seeks against Ghost.

In short, the Court finds that the *Foman* factors weigh in favor of allowing Mule leave to amend. As stated above, the Court finds Mule made a good faith mistake when totaling its damages, which it now seeks to remedy.[11] In the absence of prejudice to Ghost, Mule's Motion to Amend Complaint is GRANTED.

### D. Motion to Reduce Undertaking (Dkt. 68)

Given its revised damages calculation, Mule seeks to reduce Ghost's undertaking to

---

[11] Ghost's other arguments regarding Mule's Motion to Amend can be addressed on cross-examination at trial, or in a motion for attorney fees at the conclusion of the case. They are not a basis to preclude amendment of the Complaint. However, the Court notes that Ghost's argument that the filing of an unsigned verified pleading may be a calculated delay tactic is simply wrong since a complaint may be filed unverified.

reflect the proposed reduction of the damages it seeks. Dkt. 68, ¶ 14. Although Ghost objected to this Motion, Dkt. 78, the Court has already ruled that reducing Ghost's undertaking to reflect the updated damages would not frustrate the requirements of Idaho Code section 8-502(a).

Idaho Code section 8-506C is silent with respect to whether a plaintiff may motion a court to lower the amount of a defendant's undertaking. However, Idaho Code section 8-502(e) makes clear that *the court* determines the proper amount to be posted in a defendant's undertaking. Specifically, Idaho Code section 8-502(e) states:

> If the court makes this determination favorably to the plaintiff, it shall, upon examination of the evidence or testimony submitted and such other evidence or testimony as the judge may thereupon(,) require . . . the value of any property sought to be retained by or returned to defendant and the proper amount to be specified in any undertaking which may be or has been filed by defendant pursuant to section 8-506C, Idaho Code.

Thus, Mule's Motion to Reduce Undertaking is GRANTED, and Ghost's undertaking is appropriately reduced by $98,371.01, to a total of $293,199.04. Dkt. 68, at ¶ 14.

### E. Counterclaim Motion (Dkt. 73)

Ghost seeks to amend its counterclaims and Mule filed a Notice of Non-Opposition to the Counterclaim Motion. As such, Ghost's Counterclaim Motion is GRANTED.

### IV. CONCLUSION

In sum, Ghost's Discharge Motion and Funds Motion are DENIED, Mule's Motion to Amend Complaint and Motion to Reduce Undertaking are GRANTED, and Ghost's Counterclaim Motion is GRANTED.

## V. ORDER

**IT IS HEREBY ORDERED:**

1. Ghost's Motion to Discharge Writ of Attachment, For Attorney's Fees, Costs, and Additional Sanctions (Dkt. 57) is **DENIED**.

2. Ghost's Motion to Release its Funds from Court Registry (Dkt. 59) is **DENIED**.

3. Mule's Motion for Order Reducing Ghost's Undertaking (Dkt. 68) is **GRANTED**. The Clerk of the Court is directed to deduct $98,371.01 from Ghost's undertaking and send a check in that amount, made payable to "Grey Ghost Precision, LLC," to Mr. Bistline's address on the docket.

4. Mule's Motion for Leave to File First Amended Verified Complaint (Dkt. 69) is **GRANTED**. Mule shall file its proposed Amended Complaint, with appropriate verification, within seven (7) days of the date of this Order.

5. Ghost's Motion for Leave to File First Amended Counterclaim (Dkt. 73) is **GRANTED**.

DATED: January 29, 2024

_____
David C. Nye
Chief U.S. District Court Judge