UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| STUBBORN MULE LLC, an Oregon limited liability company, | Case No. 2:22-cv-00399-DCN |
| Plaintiff, | **MEMORANDUM DECISION AND ORDER** |
| v. | |
| GREY GHOST PRECISION, LLC, an Idaho limited liability company; and GREY GHOST PRECISION, a Washington limited liability company, | |
| Defendants. | |
| GREY GHOST PRECISION, LLC, an Idaho limited liability company; and GREY GHOST PRECISION, a Washington limited liability company, | |
| Counterclaimants, | |
| v. | |
| STUBBORN MULE LLC, an Oregon limited liability company, | |
| Counter-Defendant. | |

## I. INTRODUCTION

Pending before the Court are Plaintiff Stubborn Mule LLC's ("Mule") Motion for Order Modifying Scheduling Order (hereinafter "Motion to Modify") (Dkt. 88), Mule's Motion for Leave to File Supplemental Declaration in Support of Motion to Modify (hereinafter "Motion for Leave") (Dkt. 89), and Defendants Grey Ghost Precision, LLC

and Grey Ghost Precision's (collectively "Ghost") Motion to Compel and Reopen Depositions Due to Improper Instructions not to Answer and for an Award of Attorney's Fees and Costs (hereinafter "Motion to Compel") (Dkt. 84).

Having reviewed the record and briefs, the Court finds that the facts and legal arguments are adequately presented. Accordingly, in the interest of avoiding delay, and because the Court conclusively finds the decisional process would not be significantly aided by oral argument, the Court will decide the three Motions on the record and without oral argument. Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B).

For the reasons set forth below, Mule's Motion to Modify is GRANTED, Mule's Motion for Leave is GRANTED, and Ghost's Motion to Compel is GRANTED.

## II. BACKGROUND

As previously explained in the Court's decision on Ghost's Motion to Stay (Dkt. 31), the current dispute arises from a contract the parties entered into sometime in 2020.[1] After denying the Motion to Stay, the Court held a show cause hearing on January 17, 2023, regarding Mule's then-pending Application for Prejudgment Writ of Attachment (hereinafter "Writ Application") (Dkt. 10-2). Dkt. 47. During the hearing, the parties reached an agreement regarding how to proceed with the Writ. *Id*. Specifically, the parties agreed that: (1) the Writ Application would be granted; (2) Mule would post an undertaking of $100,000 to support the Writ Application; and (3) Ghost would then stay the Writ of

---

[1] The Court incorporates the factual background set forth in its Order denying Ghost's Motion to Stay by reference. Dkt. 31, at 1–4. Rather than repeating the substantive background of this dispute, the instant section focuses on the extensive motion practice between the parties.

MEMORANDUM DECISION AND ORDER - 2

Attachment by posting an undertaking of $391,570.05. *Id*. On January 27, 2023, the Court entered an order consistent with these terms. Dkt. 48. Thereafter, the Court received checks for the ordered amounts from Mule and Ghost on April 27, 2023, and May 23, 2023, respectively.

On June 28, 2023, Sheri Johnson, Mule's Executive Director, was deposed by Ghost. Dkt. 69-3, at 5. On June 29, 2023, Ghost deposed Sterling Becklin, Mule's majority owner. *Id*.

Due to Becklin's purported perjury in obtaining the Writ of Attachment, which Ghost contends it discovered during Becklin's deposition, Ghost subsequently filed a Motion to Discharge Writ of Attachment, for Attorney's Fees, Costs and Additional Sanctions (hereinafter "Discharge Motion") on July 19, 2023. Dkt. 57. On August 8, 2023, Ghost filed a Motion to Release Funds from Court Registry. Dkt. 59. The same day, Ghost filed an Ex Parte Motion to Shorten the Briefing Schedule on its Motion to Release Funds (Dkt. 60), and Mule filed a Motion for Extension of Time to Respond to the Discharge Motion. Dkt. 61.

On August 23, 2023, Mule filed a Motion for Order Reducing Ghost's Undertaking (Dkt. 68) and a Motion for Leave to File First Amended Verified Complaint. Dkt. 69. One week later, Ghost filed a Motion for Leave to File First Amended Counterclaim. Dkt. 73.

On August 21, 2023, the Court denied Ghost's Ex Parte Motion to Shorten Briefing Schedule on Motion to Release Funds from Court Registry, held Ghost's Motion to Release Funds from Court Registry in abeyance pending the Court's ruling on the Discharge Motion, and granted Mule's Motion for Extension of Time to Respond to Ghost's

MEMORANDUM DECISION AND ORDER - 3

Discharge Motion. Dkt. 67.

On January 29, 2024, the Court denied Ghost's Discharge Motion, denied Ghost's Motion to Release Defendants' Funds from Court Registry, granted Mule's Motion for Order Reducing Ghost's Undertaking, granted Mule's Motion for Leave to File First Amended Verified Complaint, and granted Ghost's Motion for Leave to File First Amended Counterclaim. Dkt. 98.

On October 2, 2023, Ghost filed its Motion to Compel. Dkt. 84. The Motion to Compel relates to the depositions of Johnson and Becklin, and specifically to their failure to respond—at the direction of their counsel—to Ghost's inquiries regarding Mule's current and former customers, as well as whether Mule had received quality control complaints from such customers. Dkt. 84-1.

On October 12, 2023, Mule filed its Motion to Modify, seeking to extend each of the remaining Scheduling Order Deadlines by approximately 120-days.

Finally, on October 17, 2023, Mule filed its Motion to Supplement. Dkt. 89.[2] Mule seeks to supplement its Motion to Modify with its counsel's declaration, which explains that the same day the Motion to Modify was filed, Ghost served Mule with Ghost's initial expert. Dkt. 89-1, ¶ 3. Apparently, Mule's expert relied on information previously requested by Mule that was never disclosed by Ghost. *Id*. ¶¶ 5–8. Mule contends Ghost's failure to produce relevant documents is an additional reason the discovery deadlines should be extended.

---

[2] Ghost subsequently filed a Motion to Quash on November 30, 2023. Dkt. 95. The Court will address Ghost's Motion to Quash in a separate order.

The Court addresses the pending motions in turn.

## III. ANALYSIS

### A. Motion to Extend (Dkt. 88) and Motion to Supplement (Dkt. 89)

*1. Legal Standard*

Once entered, a scheduling order "controls the course of the action unless the court modifies it." Fed. R. Civ. P. 16(e). A scheduling order "may be modified only for good cause and with the judge's consent." *Id.* at 16(b)(4). A district court may modify the pretrial schedule "if it cannot reasonably be met despite the diligence of the party seeking the extension." Fed. R. Civ. P. 16 advisory committee's note to 1983 amendment. The focus of the inquiry, therefore, is upon the moving party's reasons for seeking modification. *C.F. v. Capistrano Unified Sch. Dist.* 654 F.3d 975, 984 (9th Cir. 2011) (quoting *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 610 (9th Cir. 1992)); *T. Dorfman, Inc. v. Melaleuca, Inc.*, 2013 WL 5676808, at *2 (D. Idaho October 18, 2013) ("[G]ood cause for an extension exists if a party cannot reasonably meet the pretrial schedule despite exercising due diligence."). "[D]istrict judges have broad discretion to manage discovery and to control the course of litigation under Federal Rule of Civil Procedure 16." *Avila v. Willits Env't Remediation Tr.*, 633 F.3d 828, 833 (9th Cir. 2011).

*2. Discussion*

Mule argues there is good cause to modify the Scheduling Order deadlines because: (1) the pleadings are in "flux" due to the (then) outstanding motions to amend the pleadings; (2) Ghost's "unreasonable" delays in producing discovery; (3) the significant briefing the parties have engaged in; and (4) the suspension and withdrawal of Ghost's

counsel, Mr. John Du Wors. Dkt. 88, at 1, 3, 5, 7. In addition, in its Motion to Supplement, Mule highlights that Ghost's expert, when calculating Ghost's purported damages, relied upon information that Mule previously requested from Ghost but that Ghost failed to produce. Dkt. 89-1, ¶¶ 5–8.

The Court believes an extension would be beneficial to both parties. In fact, the Court is a bit perplexed as to why Ghost is opposing an extension when it filed its Motion to Compel on October 2, 2023, a mere twenty-eight days before the existing Scheduling Order's fact discovery deadline, and a week before the briefing on the Motion to Compel would even have been completed. In fact, while opposing Mule's Motion to Extend, Ghost admitted in its response to Ghost's Motion to Supplement that it would be receptive to a sixty-day extension given its pending Motion to Compel. Dkt. 91, at 11.

The Court also finds that the discovery delays—which both parties have contributed to—warrant an extension. *See* Dkt. 92, at 4; Dkt. 91, at 8. Ghost believes it will be prejudiced by an extension because it will not have access to the funds it posted to the Court. Dkt. 91, at 11. The Court, however, has already denied Ghost's Discharge Motion and found that the Application for Prejudgment Writ of Attachment was valid. The Court understands that Ghost would like its money back as soon as possible, but the Court has already ruled on the validity of holding onto the funds in the Court's possession:

> Because Ghost has already stipulated to, and posted, an undertaking to stay the Writ from issuing, and because the Court deems the Writ Application valid, the Court sees no reason to disperse Ghost's funds until this matter has been resolved.

Dkt. 98, at 13.

For all these reasons, the Court finds there is good cause for an extension. Further, while the Court has worked diligently to resolve each of the pending motions in a timely fashion, doing so has consumed a substantial amount of time. Given the delay in issuing this decision, the Court finds good cause to grant a 120-day extension to all remaining Scheduling Order deadlines.

To be clear, the Court is extending these deadlines with the expectation that further discovery will be limited in scope to resolve the issues of the additional material apparently relied upon by Ghost's expert, but not produced to Mule, and to allow Mule's expert enough time to review that material.[3] As repeatedly noted, the briefing in this case has been extensive and the Court asks the parties to consider the ramifications of filing any additional discovery motions in the future.[4] The parties are encouraged and expected to comply with their discovery obligations and to work together to resolve disputes without involving the Court. After all, the Court and the parties share the same goal: to resolve this matter in a timely and cost-efficient manner. If the parties incumber the Court with additional discovery motions, this case will only be further delayed.

Thus, Mule's Motion to Modify and Motion to Supplement are GRANTED, and the Court will issue a new Scheduling Order reflecting the new case deadlines.

### B. Motion to Compel (Dkt. 84)

---

[3] In addition—as the Court discusses below—the discovery deadlines are appropriately extended to allow time for Johnson and Becklin's reopened depositions.

[4] Given that there is already an additional discovery motion for the Court to adjudicate (Dkt. 95), the Court finds an extension of *approximately* 120-days,  measured by today's date, to all case deadlines that were unexpired as of October 9, 2023—the date of Mule's Motion to Modify—is both warranted and will diminish the likelihood of additional changes to the Scheduling Order.

*1. Legal Standard*

The Federal Rules of Civil Procedure dictate the scope of discovery: "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26 (b)(1). For discovery purposes, courts define relevance broadly, regarding information as relevant if it "bears on" or might reasonably lead to information regarding any material fact or issue in the action. *Oppenheimer Fund Inc. v. Sanders*, 437 U.S. 340, 351 (1978). Proportionality is determined by "considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). "The fundamental principle of . . . Rule 26(b)(1) is that lawyers must size and shape their discovery requests to the requisites of a case." *United States v. HVI Cat Canyon, Inc.*, 2016 WL 11683593, at *4 (C.D. Cal. Oct. 26, 2016) (cleaned up). Courts must limit discovery if it becomes cumulative or duplicative, or if the information is readily available from another source. *See* Fed. R. Civ. P. 26(b)(2)(C).

If a party served with discovery fails to adequately respond, the serving party may file a motion to compel pursuant to Federal Rule of Civil Procedure 37(a). "A court has broad discretion in deciding whether to compel discovery." *Tanner v. Schriever*, 2019 WL 5581335, at *1 (D. Idaho Oct. 29, 2019) (citing *Phillips ex rel. Estates of Byrd v. General Motors Corp.*, 307 F.3d 1206, 1211 (9th Cir. 2002)). Discovery is permitted "regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P.

26(b)(1). Relevant information "need not be admissible in evidence to be discoverable." *Id.*

Federal Rule of Civil Procedure 30(c)(2) states that "[a] person may instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(3)."

*2. Discussion*

As noted, Ghost seeks an order compelling Johnson and Becklin to reappear for their depositions to answer questions they previously refused to answer regarding Mule's customers and vendors, and whether those customers voiced complaints over the quality control issues experienced by Ghost. Ghost highlights that Mule's counsel improperly instructed Johnson and Becklin not to answer such questions, citing alleged nondisclosure agreements ("NDAs") with Mule's third-party customers and vendors. Ghost notes such NDAs have never been produced in discovery and that, even if they had, the existence of an NDA does not excuse a witness from answering deposition questions about topics covered by an NDA.

Mule responds that Ghost's Motion to Compel should be denied because it: (1) is procedurally defective under District of Idaho Local Rule 37; (2) seeks irrelevant information beyond the scope of permissible discovery; and (3) seeks information protected by one or more NDAs. If the Court grants Ghost's Motion to Compel, Mule argues the Court should permit only one limited, remote deposition, which should be afforded "Attorney's Eyes Only" protection. Mule also argues the Court should deny Ghost any costs and fees.

a. <u>The Motion is Not Procedurally Deficient</u>

Mule argues Ghost's Motion to Compel is procedurally deficient under District of Idaho Local Civil Rule 37.2, which requires a movant in a discovery dispute to "provide verbatim each disputed interrogatory, request, answer, response, or objection that underlies the motion." The Court finds that Ghost satisfied this requirement by providing verbatim quotes from each of the nine questions it asked Mule's executives that were subsequently objected to by Mule's counsel.[5] Dkt. 84-1, at 6–7.

Thus, Ghost's Motion to Compel is not procedurally deficient.

b. <u>The Scope of the Deposition Questions and Privilege</u>

Ghost argues that the information it is entitled to know is: "(1) the identity of Stubborn Mule's customers during the period of January 2020 to February 2022 (the time immediately prior to and during the parties' business relationship); (2) which customers complained to Stubborn Mule about product defects or similar quality control issues; (3) the nature of those complaints; and (4) how Stubborn Mule resolved those complaints, if at all." Dkt. 93, at 5. Mule argues this information is not relevant to any party's claims or defenses and is therefore beyond the scope of allowable discovery. Dkt. 90, at 10. In addition, Mule contends it has binding NDAs with its customers to ensure that

---

[5] Mule also argues Ghost's Motion to Compel is procedurally deficient because Ghost's counsel failed to provide a certification that he complied with District of Idaho Local Civil Rule 37.1, as well as with the Court's required discovery dispute procedure. Although Ghost's counsel did fail to file the requisite certification, the Court's law clerk was contacted regarding the contested depositions, and, given the Court's inability to mediate the discovery dispute at the last minute, provided the Court's guidance with respect to how the parties should proceed. Dkt. 84-2. Given the Court's involvement with the contested depositions, it is aware that the attorneys both met and conferred in person, and that the parties attempted to comply with the Court's discovery dispute mediation process but could not do so given the timing of the dispute. Under these limited circumstances, the Court will excuse Ghost's failure to comply with District of Idaho Local Civil Rules 37.1 and 37.2.

commercially sensitive information regarding those customers and their products remains confidential while allowing Mule to manufacture custom parts.

Before digging deeper into Mule's arguments, the Court would like to clear up one issue raised by Ghost: that the NDAs may not even exist because they were not produced. Dkt. 93, at 6. Mule contends that the NDAs do indeed exist. Dkt. 90, at 7–8. While the Court assumes the NDAs exist given the representations of Mule's counsel, the NDAs do not preclude Mule from responding to Ghost's discovery requests.

First, it "is an 'unremarkable proposition' that an NDA 'will not stand as a barrier to discovery between two parties in litigation.'" *Multiven, Inc. v. Cisco Sys., Inc.*, No. C08-05391 JW (HRL), at *3 (N.D. Cal. Feb. 16, 2010) (quoting *Saini v. Int'l Game Tech.,* 434 F.Supp.2d 913, 922 (D. Nev. 2006)). "[T]he mere existence of non-disclosure agreements does not preclude discovery." *BLK Enterprises, LLC v. Unix Packaging, Inc.*, 2018 WL 5993841, at *4 (C.D. Cal. Sept. 26, 2018).

Mule's arguments in its response to Ghost's Motion to Compel are almost identical to those asserted by the defendant in *BLK Enterprises*. The *BLK enterprises* court was unpersuaded by the defendant's argument that its NDAs with its customers shielded it from questions regarding such customers during discovery. *Id*. The Court held that the defendant must be allowed to answer non-privileged questions in a subsequent deposition and that the protective order in the case properly protected confidential information disclosed in such answers. *Id*. at *5.

 Ghost argues that Mule cannot use its various NDAs as a defense to answering questions during Mule's Rule 30(b)(6) deposition; the Court agrees. "[A]n NDA is an

insufficient basis to decline to answer a question at a Rule 30(b)(6) deposition." *Unigestion Holdings, S.A. v. UPM Tech., Inc.*, 2021 WL 7710796, at *5 (D. Or. Oct. 19, 2021). While information in non-disclosure agreements—such as trade secrets—can be classified as privileged information, the "non-disclosure agreement itself does not confer a legal privilege from discovery on any documents that were not already privileged." *Shvartser v. Lekser*, 270 F. Supp. 3d 96, 98 (D.D.C. 2017). Mule argues that the information contained within its NDAs contain confidential information regarding "product designs" and that giving such information away would be "competitively detrimental" to Mule. Dkt. 90, at 8. However, Ghost contends it never asked, and does not intend to ask, Mule questions about Mule's customer's trade secrets, customer lists, supplier lists, pricing or market analyses, manufacturing or technical information, or any other "Proprietary Information." Dkt. 93, at 9. Instead, Ghost seeks to question Mule about the identities of Mule's customers and whether such customers have made complaints about Mule's products.[6] *Id*.

While Mule is correct that Ghost is a direct competitor, Mule's NDAs alone do not shield Mule from answering *any* questions regarding the identity of its customers and the quality issues raised by such customers. Rule 30 protects Mule from disclosing privileged material, such as trade secrets, but Mule must answer questions that are non-privileged

---

[6] Although Ghost repeatedly faults Mule for failing to produce its NDAs, it is unclear whether Ghost ever requested production of Mule's NDAs. Regardless, Ghost does not appear to seek copies of Mule's NDAs in the instant Motion to Compel, but rather requests that the Court compel Becklin and Johnson to reappear for their depositions to answer questions about Mule's customers and whether they voiced quality control complaints similar to those experienced by Ghost. Dkt. 84-1, at 8–9; Dkt. 93, at 3. The instant Order is limited to compelling the relief Ghost requested. Thus, while Becklin and Johnson are compelled to reappear for their depositions and respond to Ghost's questions regarding Mule's customers and such customers' quality control complaints, if any, the Court is *not* ordering Mule to produce its NDAs.

even if they reveal confidential relationships with customers and vendors. "[P]arties cannot simply vitiate their discovery obligations by asserting third party privacy rights based on NDAs." *BLK Enterprises, LLC*, 2018 WL 5993841, at *4.

Moreover, the Court already has a protective order in place to protect any confidential information revealed in depositions, motions, discovery, etc. Dkt. 56, ¶¶ 2, 7. The parties have already engaged in filing sealed motions and other documents pursuant to the protective order and should continue to do so as they see fit.

Second, the questions asked by Ghost are clearly relevant under Rule 26(b). Ghost seeks to establish Mule has a history of making defective products and that Mule misrepresented its quality control standards. Dkt. 93, at 7. This information is potentially relevant to Ghost's fraud and misrepresentation claims. *See Oppenheimer Fund*, 437 U.S. at 351.

Thus, Mule cannot use its NDAs as a shield to object to answering questions regarding the identity of its relevant customers and vendors, as well as whether those customers raised any quality issues. Questions regarding such topics are relevant under Rule 26(b).

c. Limitations

While the Court is granting the Motion to Compel, it does so with several limitations.

First, the deposition will be conducted remotely because of the limited scope of the questions. The Court does not find it necessary for the parties to again fly to Coeur d'Alene to conduct subsequent depositions with a limited scope.

Second, Becklin and Johnson will both be re-deposed and each deposition will not exceed one-hour. The deponents are not to be in the same room during their respective depositions and are not to discuss what questions were asked of them with the other deponent.

Third, there will be no "attorneys' eyes only" designations arising from the information coming out of the deposition. The Protective Order already protects any confidential information disclosed in the deposition.

Fourth, only questions relating to Mule's customers and vendors from the period of January 2020 to February 2022 may be asked because this was the timeframe of the parties' business relationship and will properly limit the scope of questions to the relevant timeframe of this dispute.

d. <u>Attorney Fees and Costs</u>

As the Court previously warned Mule (*see* Dkt. 84-2), if the Court granted Ghost's Motion to Compel, an award of attorney fees would likely follow. The Court believes Ghost is entitled to the fees it incurred in obtaining the instant Order and for reopening Johnson and Becklin's depositions. *Unigestion Holdings, S.A. v. UPM Tech., Inc.*, 2021 WL 7710796, at *5 (D. Or. Oct. 19, 2021) ("the Court advises the parties that if a Rule 30(b)(6) witness refuses to answer a deposition question and the Court later determines that the refusal was without proper basis, the Court likely will order that the deposition reopened at the expense of the party producing the witness and the Court would likely also award all reasonable costs to the party taking the deposition.").

Under Federal Rule of Civil Procedure 37(a)(5)(A), if a motion to compel is granted,

and the opposing party has been heard, then the Court "must" require the opposing party to pay "the movant's reasonable expenses incurred in making the motion." However, if the opposing party's nondisclosure was "substantially justified," or the opposing party tried in "good faith" to obtain the disclosure without court action, then an order of payment will not be necessary. Fed. R. Civ. P. 37(a)(5)(A)(i)–(ii).

The Court does not believe that Mule tried in good faith to remedy this issue before Ghost filed its Motion to Compel. As the Court expressly warned Mule, it could file a Motion to Strike Becklin and Johnson's deposition responses in lieu of instructing them not to answer and risking a Motion to Compel from Ghost. Dkt. 84-2. The Court also told Mule that it would likely bear the burden of the costs if the Court ordered it to reopen Becklin and Johnson's depositions. *Id*. Further, Mule's nondisclosure was not substantially justified because Mule wrongly concluded that its NDAs protected it from Ghost's questions. Mule also never produced the NDAs to the Court or Ghost, so neither could tell exactly what specific information was confidential.

In short, having taken the risk of instructing Becklin and Johnson not to respond to Ghost's questioning, Mule must now bear the costs of its tactical decision.

### IV. CONCLUSION

In sum, Mule's Motion to Modify and Motion to Supplement are GRANTED and a new Scheduling Order will be entered shortly after this decision is issued. Ghost's Motion to Compel is GRANTED, and Mule must pay reasonable attorney fees and costs associated with both the Motion to Compel and the newly ordered depositions. Finally, Becklin and Johnson's reopened depositions are subject to the limitations set forth in this Order.

MEMORANDUM DECISION AND ORDER - 15

## V. ORDER

**IT IS HEREBY ORDERED:**

1. Ghost's Motion to Compel (Dkt. 84) is **GRANTED**.

   a. Becklin and Johnson may both be re-deposed and each deposition will not exceed an hour;

   b. The additional depositions will be conducted remotely;

   c. The questions during the reopened depositions shall be limited to Mule's customers and vendors from the period of January 2020 to February 2022, as well as any quality control issues identified by Mule's customers and vendors during this time period;

   d. The Protective Order will cover any confidentiality concerns arising from these depositions.

   e. **Before the close of discovery,** Ghost shall submit a Motion for Attorney's Fees, detailing the fees and costs it incurred in briefing its Motion to Compel and re-deposing Becklin and Johnson, with the normal briefing schedule to follow.

2. Mule's Motion to Modify (Dkt. 88) is **GRANTED**

3. Mule's Motion to Supplement (Dkt. 89) is **GRANTED**.

4. The Court will issue an amended Scheduling Order.

DATED: February 14, 2024

David C. Nye
Chief U.S. District Court Judge