UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| STUBBORN MULE LLC, an Oregon limited liability company,<br><br>    Plaintiff,<br><br>v.<br><br>GREY GHOST PRECISION, LLC, an Idaho limited liability company; and GREY GHOST PRECISION, LLC, a Washington limited liability company,<br><br>    Defendants.<br><br>GREY GHOST PRECISION, LLC, an Idaho limited liability company; and GREY GHOST PRECISION, LLC, a Washington limited liability company,<br><br>    Counterclaimants,<br><br>v.<br><br>STUBBORN MULE LLC, an Oregon limited liability company,<br><br>    Counter-Defendant. | Case No. 2:22-cv-00399-DCN<br><br>**MEMORANDUM DECISION AND ORDER** |

## I. INTRODUCTION

Before the Court is a Motion to Quash Portions of a Subpoena, filed by Defendants Grey Ghost Precision, LLC (Idaho) and Grey Ghost Precision, LLC (Washington)

MEMORANDUM DECISION AND ORDER – 1

(together "Grey Ghost"). Dkt. 95. Plaintiff Stubborn Mule opposed the Motion (Dkt. 96) and Grey Ghost replied (Dkt. 97). The matter is now ripe for consideration.

Having reviewed the record and briefs, the Court finds that the facts and legal arguments are adequately presented. Accordingly, in the interest of avoiding delay, and because the Court conclusively finds the decisional process would not be significantly aided by oral argument, the Court will decide the three Motions on the record and without oral argument. Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B).

For the reasons set forth below, Grey Ghost's Motion to Quash is GRANTED.

## II. BACKGROUND

The Court set forth the facts underlying the parties' dispute in a prior order. Dkt. 31. For purposes of deciding the instant motion, the Court simply adds that the parties are now engaged in discovery. *See* Dkt. 101, at 2. As part of the discovery process, Stubborn Mule served on Grey Ghost a subpoena, requesting production of various documents, communications, and other information from Grey Ghost's expert, Erick C. West. Of relevance here are the Stubborn Mule's requests in the subpoena that West produce his entire case file on this action ("Request #1"), all notes and documents he has prepared relating to his work on this action ("Request #2"), all communications between himself and anyone other than counsel for Grey Ghost regarding his work on this action ("Request

#3"), and all communications between himself and Casey Ingels ("Request #7").[1] Ingels is an attorney, a former CEO of Grey Ghost, and a fact witness for Grey Ghost.

Grey Ghost argues that the subpoena is overbroad. Specifically, it contends that Stubborn Mule seeks draft reports and communications between West and Grey Ghost's counsel, both of which are shielded under the work product doctrine. Stubborn Mule counters that because Ingels is not Grey Ghost's counsel of record, its representative, or a representative of its counsel, communications between West and Ingels are freely discoverable. Additionally, Stubborn Mule contends that, while draft reports themselves may not be discoverable, any accompanying notes or highlights are.

The Court will set forth the legal standards governing the parties' dispute, then analyze each of their arguments under those standards.

### III. LEGAL STANDARDS

Federal Rule of Civil Procedure 45(d)(3) grants district courts the power to "quash or modify a subpoena that . . . requires disclosure of privileged or other protected matter, if no exception or waiver applies[.]" Accordingly, portions of a subpoena that request production of materials covered by the work-product doctrine may be quashed.

The work-product doctrine, as codified in Federal Rule of Civil Procedure 26(b)(3), "is a qualified privilege that protects from discovery documents and tangible things prepared by a party or his representative in anticipation of litigation." *United States v.*

---

[1] The Court notes that numbering this final request as #7 instead of #4 may appear to be a typo. It is not. The numbering the Court has used here mirrors the numbering of Stubborn Mule's requests in its subpoena. Dkt. 95-2, at 7–9. Notably, Grey Ghost did not object to all the requests; only those outlined.

MEMORANDUM DECISION AND ORDER – 3

*Sanmina Corp.*, 968 F.3d 1107, 1119 (9th Cir. 2020) (cleaned up). The purpose of the doctrine is to "shelter[] the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case." *United States v. Nobles*, 422 U.S. 225, 238 (1975). Further, because "attorneys often must rely on the assistance of investigators and other agents in the compilation of materials in preparation for trial . . . [it is] necessary that the doctrine protect material prepared by agents for the attorney as well as those prepared by the attorney himself." *Id.* at 238–39.

Federal Rule 26(b)(4)(B) makes clear that drafts of any expert report required by Rule 26(a)(2) are protected from discovery, regardless of the form in which they are recorded. Fed. R. Civ. P. 26(b)(4)(B). Rule 26(b)(4)(C) states that communications between a party's attorney and an expert witness are protected from discovery unless the communications: (i) relate to the expert's compensation, (ii) "identify facts or data that the party's attorney provided and that the expert considered in forming the opinions to be expressed," or (iii) "identify assumptions that the party's attorney provided and that the expert relied on in forming the opinions to be expressed." Fed. R. Civ. P. 26(b)(4)(C).

### IV. ANALYSIS

The Court will begin with an analysis of the discoverability of West's communications with Ingels. It will then turn to the discoverability of West's draft reports.

**A. Communication with Ingels**

Stubborn Mule alleges that Ingels' discussions with West do not qualify for protection under Federal Rule 26(b)(4)(C) because, although Ingels is an attorney, he is not acting as *Grey Ghost's* attorney, nor was he ever acting at the behest of Grey Ghost's counsel. Instead,

they argue, Ingels appears to be acting as some sort of ill-defined, third-party consultant whose communications with West ought to be treated like those of any other non-attorney. Grey Ghost counters that, even though Ingels is not its counsel of record, he has nevertheless provided legal services sufficient to qualify as counsel for Grey Ghost. Alternatively, Grey Ghost argues that Ingels has acted as an agent of its counsel of record, Arthur Bistline. For reasons explained below, the Court agrees with Grey Ghost.

In support of its Motion, Grey Ghost has submitted two affidavits—one from Ingels himself (the "Ingels Affidavit"), and another from Bistline (the "Bistline Affidavit"). In the Ingels Affidavit, Ingels asserts that he has been "consulting and providing other legal assistance to Grey Ghost and its counsel of record in this case." Dkt. 95-4, at 1. Ingels elaborates that, as part of his assistance, he has communicated with West about litigation strategy and has shared with West his thoughts and impressions about the issues in this case. *Id.* at 1–2. He implies that he understands himself to be acting as a consulting attorney or litigation support staff. *Id.* at 2.

Ingels' assertions are supported by the Bistline Affidavit, wherein Bistline states that, particularly since the withdrawal of Grey Ghost's prior counsel, he has "utilized Mr. Ingels's services to help in representing Grey Ghost in this matter." Dkt. 97-1, at 1. Bistline elaborates that he has had regular discussions with Ingels regarding litigation strategy, and that Ingels' communications with West have taken place pursuant to his assistance to Bistline. *Id.* at 1–2.

From these affidavits, the Court is persuaded that Ingels has been acting *both* as counsel for Grey Ghost *and* as an agent of Bistline.

MEMORANDUM DECISION AND ORDER – 5

Stubborn Mule argues that the first conclusion is foreclosed because Ingels "has not appeared as counsel in this lawsuit and has not requested to be admitted to this Court *pro hac vice*." However, Ninth Circuit district courts have not applied such a stringent standard in determining whether to apply the work-product doctrine. In *O'Connell v. Smith*, the California Central District Court encountered circumstances similar to those presented by Grey Ghost's use of Ingels. 2014 U.S. Dist. LEXIS 198901, at *18 (C.D. Cal. Aug. 4, 2014). There, a party's representative "frequently consulted with attorneys regarding . . . the viability of the [party's] claims" before the representative formally retained counsel for the party. In addressing whether documents related to the representative's consultations were protected under the work-product doctrine, the court stated "[w]hile there may be a factual distinction between using consulting attorneys and using retained counsel, the Court sees no legal distinction between the two for the purposes of the opinion work product doctrine." *Id.* at 19.

Both affidavits indicate that Ingels has been acting, at the very least, as a consulting attorney for Grey Ghost, and this evidence is not convincingly rebutted by Stubborn Mule. Accordingly, under Fed. R. Civ. P. 26(b)(4)(C), communications between Ingels and West qualify for work-product protection, at least to the extent those communications did not contain information otherwise exempted or waived.

Alternatively, the affidavits also support a finding that Ingels has been working as an agent for Grey Ghost's counsel, affording Ingels' materials another avenue for protection under *Nobles*. *See* 422 U.S. at 238–39. In *Nobles*, the Supreme Court held that materials prepared by an attorney's agent qualify for the same protection as materials prepared by the

MEMORANDUM DECISION AND ORDER – 6

attorney himself. Here, Bistline makes clear that, in communicating with West, Ingels was acting as Bistline's agent. Dkt. 97-1, at 1–2. Accordingly, documents relating to those communications qualify for protection.

Stubborn Mule protests that, in this litigation, Grey Ghost "has repeatedly disclaimed having any sort of meaningful relationship with Mr. Ingels since 2020." Dkt. 96, at 8. Thus, the argument goes, to now claim that he is representing the company is disingenuous. But this overstates Grey Ghost's position. Grey Ghost has asserted that Ingels' employment as CEO of Grey Ghost ended in 2020. *See* Dkt. 26, ¶ 16; Dkt. 96-1, at 2. But a termination of employment does not necessarily foreclose all meaningful relationships. As appears to be the case here, a party may maintain a professional relationship, and even provide legal services to a company for which he or she previously worked. Accordingly, Stubborn Mule's argument is unavailing.

Equally unavailing is Stubborn Mule's contention that Ingels would be violating ethics rules if he were to act as counsel for Grey Ghost. Dkt. 96, at 8 n.1. In its Response to Grey Ghost's Motion, Stubborn Mule implies that if Ingels were to act as counsel for Grey Ghost, he would run afoul of Rule 3.7 of the Washington and Idaho Rules of Professional Conduct. Rule 3.7—which is identical in both jurisdictions in portions relevant to Stubborn Mule's claim—prohibits a lawyer who is likely to be a necessary witness from acting as an advocate at trial. Wash. R. Prof. C. 3.7(a); Idaho R. Prof C. 3.7(a). However, as Grey Ghost notes, Ingels has not acted as its advocate *at trial*, nor is there any indication that he intends to do so. *See* Dkt. 97, at 7–8. As the Court has noted before, nothing in Rule 3.7 precludes an attorney who will serve as a witness at trial from representing a party in pre-trial activities.

MEMORANDUM DECISION AND ORDER – 7

*See, e.g.*, *Donoval v. City of Sun Valley*, 2019 U.S. Dist. LEXIS 32607, at *27 (D. Idaho Feb. 26, 2019) (clarifying that Rule 3.7 forbids a witness-attorney from acting as an advocate *at trial*, but not in pre-trial activities). Thus, Rule 3.7 has no implications for Ingels service here to Grey Ghost and Bistline.

Stubborn Mule attempts to bolster its argument by citing to a variety of cases in which district courts declined to apply the work-product doctrine. *See* Dkt. 96, at 10. But in none of those cases was the person asserting protection an attorney or working under the direction of an attorney. Here, Ingels is an attorney and is working at the behest of Bistline. And those facts have a material—even a determinative—impact on the Court's analysis.

In sum, because Ingels is acting as counsel for Grey Ghost, West may withhold from production under Request #1 any communications between himself and Ingels that are not covered by the exceptions under Fed. R. Civ. P. 26(b)(4)(C). Request #3 should be understood to exclude communications with Ingels because the Court has found that Ingels is working as counsel for Grey Ghost. Finally, Request #7 is quashed except to the extent the communications relate to West's compensation; identify facts or data that Ingels provided, and that West considered in forming his opinions to be expressed; or identifies assumptions that Ingels provided, and that West relied on in forming his opinions to be expressed. *See* Fed. R. Civ. P. 26(b)(4)(C).

### B. Draft Reports

As noted above, expert witnesses are generally not required to produce drafts of reports or disclosures required under Rule 26(a)(2). Nevertheless, "this protection does not extend to the expert's development of his or her opinions that occurs outside of draft reports.

MEMORANDUM DECISION AND ORDER – 8

*Planned Parenthood of the Great Nw. & the Hawaiian Islands v. Wasden*, 2020 WL 7847241, *2 (D. Idaho Dec. 31, 2020) (quoting Fed. R. Civ. P. 26(b) advisory committee's notes (2010 amendment)). Accordingly, "[n]otes, memoranda, review of reports—by both the testifying expert and any non-attorneys—also fall outside the protection of the work product doctrine." *Id.* The same is true for outlines and emails discussing the reports with non-attorneys. *Id.*

Pursuant to *Planned Parenthood*, Stubborn Mule seeks production of any communications between Ingels and West, including comments or notes from Ingels on drafts of West's report. Dkt. 96, at 14. It also seeks any of West's own notes, outlines, or memoranda that he relied on to develop his opinion. *Id.* Stubborn Mule's requests for communications from Ingels are based on its understanding that Ingels is acting as a non-attorney third-party consultant. However, as the Court has made clear, Ingels is functioning as counsel for Grey Ghost, and his communications with West, therefore, qualify for protection under the work-product doctrine. West's own notes, outlines, memoranda, and emails discussing his report with non-attorneys, on the other hand, must be produced. *Planned Parenthood*, 2020 WL 7847241, at *2.

Accordingly, Requests #1 and #2 shall be understood to exclude draft reports, but not notes or other non-report materials created by West. Further, West must produce any materials that fall under Rule 26(b)(4)(C).

## V. CONCLUSION

The affidavits submitted by Grey Ghost make clear that Ingels is providing legal services in this matter. Accordingly, communications between Ingels and West are covered

MEMORANDUM DECISION AND ORDER – 9

by the work-product doctrine and need not be produced. Additionally, West need not produce any draft reports, but he must produce his notes and other non-report materials showing the development of his opinion. West must also produce all communications between himself and Ingels, Bistline, or any other counsel for Grey Ghost that fall under the exceptions outlined in Fed. R. Civ. P. 26(b)(4)(C).

## VI. ORDER

The Court HEREBY ORDERS:

1. Grey Ghost's Motion to Quash (Dkt. 95) is GRANTED.

DATED: April 12, 2024

_____
David C. Nye
Chief U.S. District Court Judge